IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUTO EQUITY LOANS OF DELAWARE, LLC,** | : | **Civil No. 1:19-CV-1590** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSH SHAPIRO, in his official capacity as Attorney General for the Pennsylvania Commonwealth,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant's Motion for Judgment on the Pleadings.  (Doc. 40.)  For the reasons outlined below, the court will deny the motion and order the parties to submit further briefing.

## I.    BACKGROUND

For the sake of this motion, the court takes Plaintiff's allegations as true as well as other documents presented to the court for the taking of judicial notice. Plaintiff Auto Equity Loans of Delaware, LLC ("Plaintiff") is a company physically based in Delaware that provides car loans to individuals with car title serving as security.  Plaintiff alleges that it has no contact with the state of Pennsylvania other than: (a) "Pennsylvania borrowers choos[ing] to travel into a state where Auto Equity operates to obtain a loan"; and (b) contacts that are "incidental to Auto

1

Equity's general marketing efforts or to loan agreements that were executed outside of Pennsylvania and governed by the law of Delaware." (Doc. 9, p. 2.)

On August 7, 2018, Defendant Josh Shapiro—in his official capacity as the Pennsylvania Attorney General ("Defendant" or the "Attorney General")—sent a letter to Plaintiff informing it that Defendant was concerned that Plaintiff was providing loans to Pennsylvania residents that included interest rates exceeding the legally permissible maximum under Pennsylvania law, and that such law applied regardless of Plaintiff's physical location. (Doc. 9-1, p. 2.) Defendant also informed Plaintiff that an ongoing lawsuit of such nature was already occurring in the Eastern District of Pennsylvania, where the court had already rejected three motions to dismiss Defendant's claims. (*Id.*) On August 15, 2018, Defendant sent a follow-up letter requesting a set of information and documents from Plaintiff that also explicitly stated the letter was not a formal administrative subpoena. (Doc. 9-1.)

Instead of complying with this request, Plaintiff filed a lawsuit against Defendant in the United States District Court for the District of Delaware on September 24, 2018. (Doc. 1.) On December 19, 2018, Plaintiff filed its first Amended Complaint laying out its current claims. (Doc. 9.) The core of Plaintiff's complaint is that it operates exclusively in Delaware, rendering Pennsylvania's attempt to enforce Pennsylvania laws upon it a violation of the Interstate Commerce and Due Process Clauses of the United States Constitution. Plaintiff alleges that it

is in fear of pending enforcement proceedings because of the other lawsuits brought by the Attorney General against similar entities.  Plaintiff's complaint requests two forms of relief.  First, Plaintiff requests a broad "injunction barring the Attorney General from taking any further action against Auto Equity." (*Id.*, p. 11.)  Second, Plaintiff requests that the court enter a declaratory judgment establishing "that the Attorney General has no authority to enforce against Auto Equity . . . any . . . laws or regulations that the OAG is empowered to administer and enforce." (*Id.*, p. 12.)

On January 24, 2019, Defendant filed Motion to Dismiss Plaintiff's Amended Complaint or Alternatively for Transfer of Venue, arguing, among other things, that Plaintiff's claims were not ripe and should be properly heard in the Middle District of Pennsylvania. (Doc. 10.)  On September 3, 2019, the District of Delaware granted the motion in part, transferring the case to this court and ruling that Plaintiff's sole ripe claim was whether "Defendant's authority even to investigate Plaintiff" was unconstitutional. (Doc. 16, p. 9 (citing *Marathon Petroleum Corp. v. Sec. of Fin. Of Del.*, 876 F.3d 481, 498-99 (3d Cir. 2017)).  In support of its ripeness ruling, the District of Delaware stated that: "Plaintiff contends that its claims 'raise predominantly legal question that this Court can answer decisively without the need for much, if any, further factual development.'  The Court agrees with Plaintiff." (Doc. 16, p. 11.)  On September 16, 2019, the case was electronically transferred to this court.

After transfer, the Attorney General immediately moved for this court to reconsider the District of Delaware's denial of the motion to dismiss on other grounds.  On February 6, 2020, this court denied that motion.  On April 23, 2020, the parties submitted a joint proposed case management plan, which the court took into consideration when issuing its case management order five days later.  The court's case management order set, among other things, this case for trial on March 1, 2021.

On June 9, 2020, Defendant appears to have submitted written discovery to Plaintiff, which Plaintiff did not submit a timely response to.  At some point soon thereafter, Defendant—through different counsel than that presently before the court—filed a petition with the Philadelphia County Court of Common Pleas ("CCP"), requesting an order compelling Plaintiff to comply with a subpoena Defendant claims to have served upon it.  In response, the CCP issued the following order on August 31, 2020:

> **AND NOW**, this 31st day of August, 2020, Respondent Auto Equity Loans of Delaware, LLC is hereby ordered to comply with the Subpoena issued and served on June 25, 2020 by the Commonwealth of Pennsylvania, Office of Attorney General.  Respondent is hereby ordered to:
>
> 1. Produce all information and documents specified in the above-mentioned Subpoena within ten (10) days of the date of this Court's Order;

4

2. Pay the court costs incurred by the Commonwealth in filing this Motion in the amount of Three Hundred Thirty-Three and 23/100 Dollars ($333.23).

(Doc. 41-3.)  By using the word "order" as the operative verb, the court was initiating a process to compel enforcement of a subpoena.  *Order*, Black's Law Dictionary (11th ed. 2019) ("A command, direction, or instruction.")

On September 9, 2020, Defendant filed a motion for judgment on the pleadings with the court, arguing, in essence, that the court should freeze the instant case under the *Younger* abstention doctrine, deferring to the state court proceeding which it claims was "pending" before any substantive activity in the instant case took place here.  On December 9, 2020, however, the CCP vacated its earlier order upon a showing that Defendant had failed to properly serve Plaintiff with the subpoena.  The new order at issue reads as follows:

**AND NOW**, this 9th day of December 2020, upon consideration of Plaintiff's Petition to Enforce Subpoena Filed under Control Number 20082454, and the responses, it is hereby **ORDERED** and **DECREED** that the petition is **GRANTED IN PART** as follows:

1. Because the subject subpoena was not served, Plaintiff is granted leave of 30 days from the date this order is docketed to properly serve it and file an affidavit of service with the court; and

2. Defendant is granted leave of 30 days from the date Plaintiff's affidavit of service is docketed to produce all information and documents requested in the subject subpoena.

(Doc. 46-1.)   Thus, the CCP's standing order only grants the parties "leave" or "permission" to potentially serve and then respond to a subpoena.  *Leave*, <u>Black's Law Dictionary</u> (11th ed. 2019) ("Permission <by leave of court>.").  On January 21, 2021, the Attorney General filed an additional letter with the court arguing Plaintiff has failed to comply with discovery and that a conference with the court is needed to resolve this issue.  The issue has now been fully briefed and is ripe for resolution.

## II.   **STANDARD OF REVIEW**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  As the Third Circuit has explained:

> A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion. Consequently, the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.  Thus, in deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotations omitted).

### III.   **DISCUSSION**

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court created the *Younger* abstention doctrine, holding that federal courts should not intervene into "pending state court proceedings" to enter an injunction or otherwise disrupt their processing of cases "except under special circumstances." *Id.* at 41. The evolution of this doctrine, however, has made very clear that *Younger* abstention is the exception, not the rule, because "a federal court's obligation to hear and decide a case" that it has jurisdiction over "is virtually unflagging." *PDX North, Inc. v. Comm'r N.J. Dep't of Labor and Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal citations and quotations omitted).  Thus, to trigger *Younger* abstention, the movant must show that there is an ongoing state proceeding concerning the instant matter that falls within one of the following three categories: "(1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function." *Id.*  After making such a showing, the movant must then show that the state court proceeding was "pending" at the time the instant action was initiated in federal court. *See id.*

In *PDX North*, a New Jersey shipping company named PDX was audited by the New Jersey Department of Labor and Workforce Development for its method of classifying drivers as independent contractors. *Id.* at 877.  The Department concluded that PDX had misclassified its workers and thus owed unpaid taxes. *Id.*

PDX challenged this ruling in the New Jersey Office of Administrative Law. *Id.* About seven months later, PDX filed suit in federal court seeking a declaration that "New Jersey's statutory scheme for classifying workers . . . was unconstitutional under the Interstate Commerce Clause." *Id.* The Department and PDX agreed to stay the Administrative case. *See id.* Meanwhile, another shipping company, SLS, intervened in the federal lawsuit, seeking largely identical relief. *See id.*

Over two years after the federal lawsuit was filed, the Department filed a motion for judgment on the pleadings asking the District Court to abstain from hearing the case in deference to the New Jersey Office of Administrative Law hearing the matter. *See id.* The District Court granted the motion in full. *Id.* On appeal, the Third Circuit reversed in part, holding that the motion was properly granted regarding PDX but not SLS. *See id.* While PDX was actually subject to enforcement actions at the time the federal lawsuit was initiated, SLS intervened at a time when it had only been audited—thus, "for SLS, there was no ongoing judicial proceeding." *Id* at 879. The Third Circuit rejected the district court's finding that "the Department's audit of SLS was an ongoing state judicial proceeding." *Id.*

Turning to the facts before the court, there is no ongoing state judicial proceeding that the court must defer to. Defendant argues that the third category of *Younger* cases applies here: a "civil proceeding[] involving orders in furtherance of the state courts' judicial function." *Id.* at 882. Defendant specifically argues that it

has already attained an order compelling Plaintiff to comply with its subpoena, thus, if the court hears the current case, it may enter an injunction that in effect bars the CCP from entering sanctions or otherwise giving teeth to its order. This argument, however, mischaracterizes the standing PCP order. It only grants the parties leave to begin discussing a subpoena. It does not order a party to do anything. The actions at issue here are thus closer to an audit than an enforcement proceeding, mandating the court deny *Younger* abstention under *PDX*. While there is clearly some activity occurring in state court that may create judicial overlap, "[p]arallel state court proceedings do not detract from" "a federal court's obligation to hear and decide a case." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotations omitted).

Nonetheless, there is a problem with the dual ongoing proceedings. The question of which case was 'initiated' first cannot actually be decided until "any proceedings of substance on the merits have taken place," *Hicks v. Miranda*, 422 U.S. 332, 349-50 (1975), and it is unclear exactly how much substantive activity is taking place in the federal case. The Attorney General is currently requesting a conference with the court because he claims that he has served substantial discovery on Plaintiff that Plaintiff has repeatedly failed to comply with. It is difficult to reconcile this letter with the Attorney General's claim that there is no litigation occurring in federal court, so this court should defer to a "pending" state court

proceeding.  Contrary to the entire purpose of the *Younger* doctrine, such a litigation method "favors not the worthy principles of comity, but the principles of forum-shopping and judicial inefficiency."  *See Cradle of Liberty Council v. The City of Phila.*, No. 08-cv-2429, 2010 WL 68874, at *4 (E.D. Pa. Jan. 6, 2010).

Thus, the court finds judicial efficiency would be better served by the parties, in twenty-one-days, briefing the ripe, pure legal question currently before the court of whether the Attorney General can attempt to investigate Plaintiff for violating Pennsylvania law.  *See PDX North, Inc.*, 978 F.3d at 880 n.6 ("Generally, 'matters of docket control,' like whether to consider a motion, 'are committed to the sound discretion of the district court.'") (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982)).

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, the court will deny Defendant's motion and order the parties to brief the core legal issue that is currently ripe before the court. An appropriate order will follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 26, 2021

10